Nott, J.,
announced the following order of the court:
On the motions to confirm the reports of Commissioner Eve-leth, bearing date March 27, 1876, and February 28, 1877, and *640 on the exceptions filed to said reports, or either of them, and after hearing counsel for the respective claimants and for the ■defendants, and after due consideration of the evidence offered in all such cases—
It is ordered as follows:
I. The first fuud will consist of cotton captured by Gol. James Williams, Seventy-ninth United States Cavalry, at Roseville, Ark., in the latter part of 1863 and early part of 1864, and will stand at $21,902.47, being the proceeds of 47 bales of cotton received by Treasury Agent Campbell, referred to in his official communication to Supervising Agent Mellen, dated Ma.y 9,1864, which were sold at the price shown by the commissioner, viz, $456.01 per bale. The number of bales contributed to this fund by capture, and which it represents, beiug so intermingled after ■capture that the identity was lost, will stand at 714 bales; and the price per bale which parties contributing should recover will stand at $30.67 per bale.
II. In the case of Daniel Henry v. The United States, the reports are confirmed subject to the correction before made, and the claimant will recover for 32 bales of cotton, at $30.67 per bale, amounting in the aggregate to $981.44.
III. In the case of Stephen H. Chism v. The United States, the reports are confirmed subject to the correction before made, and the claimant will recover for 100 bales of cotton, at $30.67 per bale, amounting in the aggregate to $3,067.
IY. In the case of John N. Burcham v. The United States, the finding of facts in the report relating exclusively to this case is amended and modified, so as to state that the cotton of the claimant was seized in December, 1863, instead of in December, 1864, and that it was intermingled with other cotton, and entered intp and formed a part of the 714 bales of cotton represented by the first fund. The claimant will recover for 182 bales of cotton, at $30.67 per bale, amounting in the aggregate to $5,581.94.
V. In case of Sarah A. Fleman v. The United States, the finding of facts in the report relating exclusively to this case is in like manner amended and modified, and the claimant will recover for 300 bales of cotton, at $30.67 per bale, amounting in the aggregate to $9,201.
YI. In the case of James R. Nelson v. The United States, the finding of facts in the report relating exclusively to this case is *641 in like manner amended and modified. The claimant will recover for 100 bales of cotton, at $30.67 per bale, amounting in the aggregate to $3,067.
VII. In the case of Ethelbert B. Bright v. The United States, the finding of facts in the report, relating exclusively to this case, is amended and modified as follows: It is found that the 130 bales of cotton seized in July, 1864, at Arkadelphia are not traced to any fund, nor is it shown that the proceeds thereof are in the Treasury. It is also found that the 246 bales of cotton seized in July, 1865, came to the possession of a Treasury agent in Shreveport, and, being intermingled with other cotton, entered into and are proportionately represented by the Shreveport fund. As to the 130 bales of cotton, the report is overruled. As to the 246 bales of cotton, the report, as modified, is confirmed. The claimant will recover for 246 bales of cotton, at $82.73, amounting in the aggregate to $20,351.58.
VIII. In the case of Mrs. Cynthia H. Brown v. The United States, the finding of facts in the report, relating exclusively to this case is amended and modified, so as to state that the cotton of the claimant was intermingled with other cotton at Helena, and that the mass, consisting of 408 bales, was subsequently taken charge of and shipped by Captain Hatch from Helena to Captain Eddy at Memphis, and that the proceeds derived from sales of this cotton, in part by Captain Eddy and in part by Supervising Agent Mellen, amounted in the aggregate to $56,04 >.06. The claimant will recover out of this fund for her porportion of cotton contributed to the mass, viz, for 621-bales of cotton, at $137.36 per bale, amounting in the aggregate to $8,585.
IX. In the case of James McDaniels v. The United States, action upon the report is suspended at the claimant’s request, and the case will be remanded to the general docket, with leave to the parties to give further evidence, but upon the condition that if the case be hereafter brought to .trial, the claimant shall, before judgment, pay to the commissioner his fees and expenses at the rate hereinafter provided.
X. In the case of Charles W. Belknap v. The United States, the report of the commissioner is notconfirmed, and the claimant is found on the evidence not to have shown that the proceeds of his cotton are in the Treasury. Judgment will be entered in the case dismissing the petition. *642 XI. In the cases of Joseph L. Sharp v. The United States, A. C. Wilbourne v. Same, Mary A. McGee v. Same, James F. Quail v. Same, Wm. M. Clark (3396) v. Same, Wm. L. Killiam v. Same, Andrew Aldridge v. Same, Wm. H. Clark (3417) v. Same, Edward R. Quin v. Same, Nathan Keller v. Same, John S. Bostick v. Same, the report of the commissioner is confirmed. Judgment will be entered in each case, dismissing the petition.
XII. And it is further ordered that the reports of the commissioner, as modified and amended by this order, stand as the findings of fact of the court.
XIII. And it is further ordered that there be allowed and paid to the commissioner by the several parties claimant for whom judgment is now directed, for his fees and expenses, including those of James Lowndes, esq., his legal assistant,'the sum of $1,500, to be apportioned pro rata among the said several claimants, according to the amounts of their respective judgments. That $500 of said allowance be paid by the commissioner to his said legal assistant, James Lowndes, esq., and that the entry of judgment in each case be suspended until the claimant produce the commissioner’s receipt for such claimant’s ratable share of the allowance made to the commissioner.
The court, upon the findings of fact, consisting of the reports of the commissioner in these cases, modified and amended by the foregoing order, decided the following as conclusions of law:
1. The existence of a fund in the Treasury derived from the captured property of the claimant, or from a mass of captured property with which the claimant’s has been intermingled, is a jurisdictional fact, and until it be established a claimant cannot recover under the provisions of the Abandoned or captured property Act. (12 Stat. L., 820.)
2. Where a claimant has proved the capture of his property by the military forces or its seizure by a Treasury agent, but has failed to prove to the satisfaction of the court that the proceeds thereof have reached the Treasury of the United States, or that the property was intermingled with a mass of similar property, the proceeds whereof are in the Treasury, he cannot recqver out of funds in the Treasury derived from unidentified captures of similar property in the same region of country and during the same period of time.
3. Where a claimant has proved to the satisfaction of the court his title to captured property and its seizure by the officers *643 or agents of the Government, and that it was sold and the proceeds thereof are in the Treasury, or that it contributed to and wasintermingledwith amass of similar property whereof the proceeds are in the Treasury, he is entitled to recover the proceeds of his property or a proportionate share of the mass with which it was intermingled. But where a portion of the proceeds of the mass has been released by the Secretary of the Treasury to persons claiming to have been owners of the captured property, or where a portion of the proceeds has been recovered in this court by other parties in other suits, a claimant’s recovery must be further restricted to a proportionate part of the fund remaining in the Treasury at the time of judgment.
Subsequent to the entry'of judgment the following rulings were filed by the court in the cases of Daniel Henry v. The United States, John N. Burcham v. The United States, Sarah A. Fleman v. The United States, James R. Nelson v. The United States, Stephen H. Chism v. The United States.
The additional findings of fact requested by the defendants since the entry of judgment'in each of the above cases are refused, for the following reasons :
1. Ho cotton which came to the Treasury through Special Agent Tuttle has been awarded to the claimants or to either of them. The nine bales classified by the commissioner in his first division of the first fund were reported by Special Agent Tuttle to have been derived by him from Special Agent Campbell, and were in fact a remnant of the Campbell cotton left at the agency by Campbell when he was transferred from that agency. The nine bales were therefore properly classified by the commissioner as part of the Campbell cotton; and the additional facts requested by the defendants, relating to Special Agent Tuttle, the time of his appointment, and the duration of his agency, are wholly irrelevant and immaterial.
2. The court having found that all of the cotton of the several claimants was intermingled at Roseville, and that the forty-seven bales which came to the custody of Special Agent Campbell from Roseville were the sole remaining remnant of the Roseville cotton, and having awarded no other cotton to the claimants, it is immaterial to the defendants when the cotton of any one claimant entered into or intermingled with the mass of forty-seven bales.
*644 3. There having been no separate sale of the forty-seven bales of Roseville cotton, and no official report evidencing the specific proceeds derived therefrom, and the different captures of cotton coming through Special Agent Campbell in 1804 from the Little Rock agency being involved in confusion, the court deemed it most in accordance with justice to ascribe to these forty-seven bales the average of the net proceeds remaining in the Treasury of all the cotton transmitted by the same special agent. The defendants not having pointed out at the hearing the means by which the court could segregate the actual proceeds of these forty-seven bales, and not having then indicated by exception to the report or special request any desire to have them ascertained, and it being impossible for the court now to ascertain the fact requested, if it be ascertainable, without opening the judgments and rehearing the cases, the request for such further findings should be refused.
At the same time, the following additional findings of fact and conclusions of law were filed by the court in the case of Ethelbert B. Bright v. The United States:
The request of the defendants, filed since the entry of judgment in this case, for the finding of additional facts, is refused, as being in effect an incomplete abstract of the evidence on which the court acted. In lieu of the finding requested, the following additional facts are found:
I. The claimant’s cotton is not traced specifically after it reached the Treasury agent in Shreveport, in the summer of 1865. The names of the agents who seized the cotton in Arka-delphia and received it in Shreveport are uncertain. The Treasury agents at the time, who were seizing cotton in Louisiana and Arkansas which was supposed to have been the property of the Confederate States, did not confine their operations to their respective districts, and great confusion exists in their reports and accounts.
II. At the time the claimant’s cotton was sezied in Arkadel-phia, a large quantity of other cotton was likewise seized as property oftheConfed er ate States and conveyed to Shreveport. Much of it was lost, stolen, and released. Ho means have been made known to the court for determining the quantity of cotton which may have been contributed to the mass beyond that accounted for by the Treasury agents, nor for determining as between the *645 present claimant and owners who may have contributed to the mass, but who have neglected to bring suits for the proceeds, the precise proportion of the fund which should be awarded to each. So far as specific losses and releases have been established by the evidence, they have been charged to or deducted from the fund, and the claimant restricted to a pro rata recovery in the balance remaining in the Treasury.
III. Of the cotton accounted for by the Treasury agents, portions of it and the proceeds of other portions were released to various persons shown in the reports of the commissioner. Such releases were in some instances the identical cotton intended to be released, and in others were an equal number of bales taken from the mass of intermingled cotton, or a supposed equivalent sum paid from the general fund in the agents’ hands. But whether the persons so receiving the cotton, or the proceeds of cotton, were the owners or entitled to the proceeds thereof, or in fact contributed any cotton to the intermingled mass, has not been shown.
And upon the foregoing additional facts, the court decides as its conclusions of law:
1. It is immaterial through what agents of the Treasury the proceeds of captured property reached the Treasury so long as there is a fund remaining in the Treasury derived from a mass of intermingled property to which the claimant’s directly contributed.
2. The reports and accounts of the Treasury agents who seized or transmitted captured property are not conclusive as to the title or ownership, nor as to the sources whence it was derived. The court may find the title of the true owner or the capture of his property, irrespective of the reports and accounts of the seizing-officer, and in contravention of them.
3. When it appears that a claimant’s property was captured and sold, and that the proceeds, or some portion of the proceeds, remain in the Treasury, the claimant is entitled to recover to that extent. If his property was intermingled after capture with other like property, and the identity lost, the court must approximate, as nearly as may be, to awarding him an exact proportionate part of the proceeds of the mass. Such a claimant’s right to recover cannot be defeated by the fact that other persons contributed captured property to the mass who have neglected to prefer suits for the proceeds in the manner prescribed *646 by the Abandoned, or captured,property Act, nor by the fact that, if such persons had appeared and established the quantity of all the property contributed to the mass, the claimant’s proportionate recovery might be diminished thereby.
4. All releases of captured property, or of the proceeds of captured property, by the Treasury Department, or by agents of the Treasury, were illegal, yet they are nevertheless to be charged against the fund as losses for which the Government, as trustee of the fund, is not responsible. In the case of a mass of intermingled property, the release of a portion by the Treasury does not establish the title or right of the person receiving it. The release must be treated as a loss affecting the whole mass, and the true owners recover their proportionate interests in the residue.
5. When there are outstanding owners, known or unknown, who contributed cotton to an intermingled mass, the quantity whereof is ascertainable exactly or. approximatively, there should be retained by the Government, as trustee, the same proportion of the fund which would be recoverable by such persons if they had brought their suits under the statute. But where the quantity is not ascertainable, and where the agents of the Treasury released cotton in kind or in proceeds to such outstanding owners, their claims on the fund, in the absence of evidence to the contrary, must be treated as satisfied and extinct.